Ernest J. Istook, Jr. (Utah Bar #15868)
Jacob S. Gunter (Utah Bar #12732)
**HOWARD, LEWIS & PETERSEN, P.C.**
120 East 300 North Street, Provo, Utah 84606
Telephone: (801) 373-6345
Istook@ProvoLawyers.com
Jacob@ProvoLawyers.com
*Attorneys for Plaintiffs*

HLP File No. 36,278

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| Nicole B. Mayor,<br><br>    *Plaintiff,*<br><br>vs.<br><br>Metropolitan Life Insurance Company, itself and as administrator of Union Pacific Corporation Nonagreement Life Insurance Plan 0149653,<br><br>    *Defendant* | **OBJECTION TO PARTIAL MOTION TO DISMISS**<br><br>Case No. 1:25-cv-00012-DBB-DAO<br><br>Judge David Barlow<br><br>Magistrate Judge Daphne A. Oberg |

## **OVERVIEW**

Plaintiff objects to Defendant's Partial Motion to Dismiss (ECF #16, filed April 24, 2025). The parties agreed to extend until June 16th the time for Plaintiff to respond, as they used the interim to explore settlement, unsuccessfuly. The Court approved the extension until June 16th.

The Motion to Dismiss involves only one portion of Plaintiff's Complaint, namely the claim for statutory penalties for failure to provide documents as required by ERISA. Under ERISA statutes and regulations, failure to provide the documents triggers daily penalties of $110. By Plaintiff's calculations, those daily penalties currently exceed $28,000. The withheld documents are essential to a proper review of the administrative record and of MetLife's handling of Plaintiff's claim for accidental death benefits in the approximate amount of $900,000.00.

Procedurally, there are three reasons to deny the Motion:

1) Plaintiff intends to amend its complaint, making the motion moot. However, Defendant ("MetLife") advises that it opposes any amendment, so simultaneously with this Objection Plaintiff is submitting a Rule 15 Motion to Amend, which includes a copy of the proposed Amended Complaint.

2) MetLife seeks a partial dismissal with prejudice, rather than with leave to amend the Complaint, but has stated no basis for not permitting an amendment and has not claimed it would be prejudiced by leave to amend.

3) The Partial Motion to Dismiss is actually a premature Motion for Partial Summary Judgment, because the motion is not based on the actual content of the Complaint but instead relies upon extraneous material (ECF #16-1). Under FRCP Rule 12(d), this renders MetLife's motion a premature summary judgment motion that turns upon an issue of fact, not law.

Substantively, the grounds for denying MetLife's motion include:

4) The contested issue of fact involves whether the failure to provide documents may be imputed to the plan administrator. However, both the Tenth Circuit and the Utah District have agreed that it is a question of fact whether a plan administrator's liability for statutory penalties may be based on delegation to a claims administrator. In her amendment to the Complaint, Plaintiff intends both a) to more clearly plead this agency involving MetLife and b) to add the plan administrator as a Defendant also liable for the statutory penalties.

## THE TWO CAUSES OF ACTION

Under ERISA and as pleaded by Plaintiff, this matter has two causes of action, which are independently recoverable. The first is the claim for statutory penalties for failure to provide materials to Plaintiff as required by ERISA's disclosure provisions. The second is the claim for accidental death benefits.

MetLife's Partial Motion to Dismiss addresses only the first cause of action, upon which statutory penalties continue to accumulate at $110 each day.

Even if an ERISA plaintiff is not awarded insurance benefits, they may still recover the ERISA penalties for failure to provide materials. The Tenth Circuit affirmed a Utah case awarding the failure-to-disclose ERISA penalties even while no insurance proceeds were awarded. *M. S. v. Premera Blue Cross,* 118 F.4th 1248 (10th Circuit, 2024), involved District of Utah Case 2:19-CV-00199. Post-appeal, the trial court (District Judge Dale A. Kimball) awarded an Amended Judgment (ECF #134, filed May 15, 2025) awarding the plaintiff $123,100 in statutory penalties (calculated at the 2018 rate of $100 per day), plus $69,640 in attorneys' fees and costs at the district court level, plus $38,700.00 in attorneys' fees and costs on appeal.

The judgment was based purely on failure to provide documents as required by ERISA, even when the related claim for insurance benefits was denied. It illustrates ERISA's strong policy that beneficiaries must receive full documents regarding how their claims are handled.

## METLIFE'S CONTENTIONS IN ITS MOTION TO DISMISS

The core argument by MetLife is that it was merely the claims administrator of this ERISA plan, not the plan administrator, and that only the plan administrator is liable for statutory penalties.

But MetLife's contentions go beyond the Complaint and ask that its status be conclusively determined based on the contents of an extraneous 276-page document (ECF #16-1) prepared by a (currently) non-party entity. The document is entitled "2023 Employee Flexible Benefits Guide: Flexible Benefits Program for Full-Time Salaried and Full-Time Hourly Employees of Union Pacific Corporation and Affiliates." (Hereinafter: "2023 Benefits Guide").

But that is not the actual plan document. It is only what ERISA designates as a Summary Plan Document, which should not be conflated with the actual plan documents that ERISA requires. "Every employee benefit plan shall be established and maintained pursuant to a written instrument." 29 U.S.C. § 1102(a)(1) (ERISA § 402(a)(1)). This written plan must meet attributes enumerated in 29 U.S.C. § 1102(a)–(b). The actual plan is different than the Summary Plan Document, which is a separate document also required by law. *Chiles v. Ceridian Corp.*, 95 F.3d 1505, 1511 (10th Cir. 1996).

## **WHAT METLIFE SEEKS WOULD ACTUALLY BE A SUMMARY JUDGMENT**

Because MetLife's motion goes beyond the pleadings, under FRCP Rule 12(d) it must be treated as a motion for summary judgment:

> (d) Result of Presenting Matters Outside the Pleadings. If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56 . All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

But so far Plaintiff has not had a reasonable opportunity to obtain and present additional pertinent material. Doing so would require some discovery, even if preliminary. However, as noted in the Attorney Planning Meeting Report (ECF #23-1) and in Defendant's Proposed Scheduling

Order, <u>MetLife opposes any discovery in this case</u>. Yet ample authority and precedent exist for certain discovery; these will be detailed as this matter proceeds, but examples include:

- Several ERISA-specific factors are discussed and discovery was permitted in *Gunderesen v. Metropolitan Life Insurance Co.,* 2011 SL 487755 (District of Utah, 2011, Case No. 2:10-CV-50 DB). These factors include, but are not limited to, the conflict of interest (in that case and in the current one) when the claim decider and the claim payor are the same, namely MetLife. See also *Benson v. Hartford Life and Accident Insurance,* 724 F. Supp.2d 1187 (District of Utah, 2010), revised after 10th Circuit's *Murphy* decision, 2011 WK 285831 (District of Utah, 2011).

- Even when the conflict of interest is obvious and admitted-to, discovery into that conflict must be permitted. *Murphy v. Deloitte & Touche Group Insurance Plan and Metropolitan Life Insurance Company,* 619 F3d 1151 (10th Circuit, 2010). And in litigation to recover ERISA's statutory penalties, the agreements between the claims administrator and the plan administrator are explicitly discoverable and indeed are required according to ERISA's statutory language. *M.S. v. Premera Blue Cross,* 118 F 4th 1248 (10th Cir, 2024), upholding discovery regarding agreements of the relationship between the claims administrator, plan sponsor and plan administrator.

- Even documents usually protected under attorney-client privilege can be discovered in ERISA matters, especially when the claim provider has a dual-role conflict of interest. *Stout v Deseret Mutual Benefit Administrators,* 2012 WL 5498018 (District of Utah, 2012, Case No.1:11-CV-00143). (In the instant case, this could be relevant regarding

> MetLife's refusal to apply Utah law regarding ambiguity and interprettion in exclusions regarding accidental death benefits..

- MetLife's role in the underlying plan is a fact-intensive question and should not be decided as a premature summary judgment based on a single self-chosen document advanced by MetLife, with zero opportunity for Plaintiff to challenge MetLife's position, nor to explore MetLife's dual and conflicting roles.

- "Proof of who is the plan administrator may come from the plan document, but can also come from the factual circumstances surrounding the administration of the plan, even if these factual circumstances contradict the designation in the plan document." *Hamilton v. Allen-Bradley Co., Inc.,* 244 F.3d 819, at 823 (11th Circuit, 2001). "The key question on this issue is whether Allen had sufficient decisional control over the claim process that would qualify it as a plan administrator under *Rosen*. [*Rosen v. TRW, Inc.,* 979 F2d 191, 193-194 (11th Circuit, 1992)] This requires an analysis of the facts surrounding the administration of the disability plan."

## THE COURT CANNOT TREAT DOCUMENT #16-1 AS DISPOSITIVE

The Defendant-provided Summary Plan Description might or might not be in accord with the actual plan, which has not been provided. If there is a conflict between the SPD and the actual plan, it is the actual plan that controls and not the SPD (except if the SPD is more beneficial to the employee. *Chiles v. Ceridian Corp.*, 95 F.3d 1505, at 1518 (10th Cir. 1996)

Even if MetLife was not the formal plan administrator, its role and conduct are **fact-intensive questions,** not properly addressed in a 12(b)(6) motion to dismiss.

MetLife treats its document as dispositive of its Motion for Partial Dismissal, but it does not deserve that status. The document does not purport to be a copy of the relevant ERISA plan. It is a summation document ("SPD") that must be distinguished from the actual plan documents. This distinction is found in case law, but more importantly is found in the ERISA statute.

As stated in *Harris-Frye v. United of Omaha Life Insurance Co.,* 2015 WL 5562196 (E.D. Tenn., 2015), "First, there is no evidence on the record that the terms of the plan provide that the SPD ["Summary Plan Description"] functions both as the ERISA plan and the SPD. Second, in this case Defendant Board of Trustees has not, and cannot argue that there is not a "separate plan document" associated with the SPD. In fact, the language of the SPD specifically addresses the Plan Document." *Harris-Frye* distinguished matters from other decisions in which it was undisputed that a SPD and the actual ERISA plan were one and the same.

ERISA by statute distinguishes such SPD's from other documents.

> 29 U.S. Code § 1022 - Summary plan description
>
> **(a)** A summary plan description of any employee benefit plan shall be furnished to participants and beneficiaries as provided in section 1024(b) of this title. The summary plan description shall include the information described in subsection (b), shall be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan. A summary of any material modification in the terms of the plan and any change in the information required under subsection (b) shall be written in a manner calculated to be understood by the average plan participant and shall be furnished in accordance with section 1024(b)(1) of this title.
>
> **(b)** The summary plan description shall contain the following information: The name and type of administration of the plan; in the case of a group health plan (as defined in section 1191b(a)(1) of this title), whether a health insurance issuer (as defined in section 1191b(b)(2) of this title)

is responsible for the financing or administration (including payment of claims) of the plan and (if so) the name and address of such issuer; the name and address of the person designated as agent for the service of legal process, if such person is not the administrator; the name and address of the administrator; names, titles, and addresses of any trustee or trustees (if they are persons different from the administrator); a description of the relevant provisions of any applicable collective bargaining agreement; the plan's requirements respecting eligibility for participation and benefits; a description of the provisions providing for nonforfeitable pension benefits; circumstances which may result in disqualification, ineligibility, or denial or loss of benefits; the source of financing of the plan and the identity of any organization through which benefits are provided; the date of the end of the plan year and whether the records of the plan are kept on a calendar, policy, or fiscal year basis; the procedures to be followed in presenting claims for benefits under the plan including the office at the Department of Labor through which participants and beneficiaries may seek assistance or information regarding their rights under this chapter and the Health Insurance Portability and Accountability Act of 1996 with respect to health benefits that are offered through a group health plan (as defined in section 1191b(a)(1) of this title), the remedies available under the plan for the redress of claims which are denied in whole or in part (including procedures required under section 1133 of this title), and if the employer so elects for purposes of complying with section 1181(f)(3)(B)(i) of this title, the model notice applicable to the State in which the participants and beneficiaries reside.

Document #16-1 is not the actual ERISA plan in this case. It self-identifies as being simply a Summary Plan Description ("SPD"); at its page 5, the document states that it is merely one of many parts of the official plan documents. (Emphasis added below):

> The information about your employee benefit plans described in this document, together with the information on the BlueCross/BlueShield (BCBS) medical options and the Kaiser Health Maintenance Organizations (HMOs) in which you may be eligible to enroll, constitute the summary plan descriptions under ERISA. **This document,** together with the information on the BCBS medical options and the Kaiser HMOs in which you may be eligible to enroll, ***along with the insurance contracts under which life, accidental death & dismemberment, vision***

***and long-term disability benefits are provided, serve as the official plan documents*** and will help you understand your benefits, as well as your rights under these plans and ERISA. For more information concerning your ERISA rights, see the ERISA section of this document.

## **AN AMENDED COMPLAINT WILL ADDRESS THE SUPPOSED DEFICIENCY**

A plan administrator's liability for penalties can be a concurrent liability for a claim administrator, often based on the common agreements and delegations between them. Pleading this circumstance is part of the intended Amended Complaint, not only to hold the actual plan administrator liable for the statutory penalties, but also describing why that liability is shared by the claim administrator, such as with indemnification clauses in their Administrative Services Agreement.

Leave to amend should be granted to add a plan administrator as a defendant liable for the statutory penalties, as expressly held in *Grant v. Eaton Disability Long-Term Disability Plan,* (S.D. Mississippi, Jackson Division, 2013), 2013 WL 485868. Further, *Grant* also cited *Krape v. PDK Labs Inc.,* 194 F.R.D. 82 (S.D.N.Y.1999), which had rejected a defense that ERISA document requests must be made directly to a plan administrator in order to trigger the statutory penalties. *Grant* (at *7) quoted from *Krape* (194 F.R.D at 87):

> ". . . the Tenth Circuit has explicitly held that when a participant requests plan information from the attorney for the retirement plan or other personnel who routinely handle the retirement plan's business, this request should be treated as though it were given directly to the plan administrator." *Id.* (citing *Boone v. Leavenworth Anesthesia, Inc.,* 20 F.3d 1108, 1109–10 (10th Cir.1994), and *McKinsey v. Sentry Ins.,* 986 F.2d 401, 404–05 (10th Cir.1993))."

## LIABILITY BASED ON DELEGATION AND AGENCY

Also showing impropriety of summary judgment is Plaintiff's need to obtain what is generically known as "Administrative Services Agreements" ("ASA") between ERISA plan administrators and claims administrators. Such document(s), and often others, contractually define the relationship between MetLife, plan sponsor Union Pacific, and the plan administrator. As set forth in the Amended Complaint, Plaintiff contends they mutually agreed that MetLife acted as agent of the plan administrator for matters which included fulfilling requests from beneficiaries for copies of documents.

Whether the ASA proves relevant to the claim for accidental death benefits, it is indisputably relevant to the claim for failure to comply with ERISA-required disclosures.

The obligation to provide Administrative Services Agreements was explicitly upheld by the Tenth Circuit in *M. S. v. Premera Blue Cross,* 118 F.4th 1248 (10th Circuit, 2024), cited previously, affirming a Utah District decision which denied all of Plaintiff's other ERISA claims but upheld the award of statutory penalties for failure to provide Plaintiff with required documents.

In *M.S. v. Premera,* the Tenth Circuit addressed the requirement that Administrative Services Agreements are among the documents that must be provided under ERISA. A lengthy discussion in Part III of the decision (starting at 1264) rejects arguments by the plan administrator and claims administrator that they had no obligation to produce copies of ASA's:

> [at 1265] We have not yet addressed whether administrative services agreements are within the scope of ERISA's disclosure provision. Acknowledging this open question, the district court concluded "the ASA falls within the scope of the ERISA disclosure provision" based on "the plain language of the statute and the language of the Plan itself."
> * * *

[at 1266] . . . the district court ruled the ASA [Administrative Services Agreement] is a "contract, or other instrument[ ] under which the plan is ... operated" within the meaning of § 1024(b)(4). App. I at 258 (alterations in original) (quoting 29 U.S.C. § 1024(b)(4)).

On appeal, Defendants contend the ASA is not subject to disclosure under § 1024(b)(4). Reviewing *de novo*, we disagree.

\* \* \*

[at 1267] We next ask: is the ASA a contract "*under which the plan is established or operated*"? 29 U.S.C. § 1024(b)(4) (emphasis added). Again, we answer yes.

\* \* \*

Thus, the clear and unambiguous meaning of the phrase "under which the plan is established or operated" includes the ASA.

Here, the Plan is both "established and operated" under the ASA. *See* 29 U.S.C. § 1024(b)(4). The ASA creates the system requiring Plan beneficiaries to submit benefits claims to Premera (rather than Microsoft directly), thus "establish[ing]" the Plan for beneficiaries. *Id.* Defendants admit as much, describing the ASA as "a contract ... that sets forth, among other things, the amount Microsoft will pay Premera and their respective roles." *See* Opening Br. at 36. And the Plan "operate[s]" according to the terms of Premera's administration, as delegated by Microsoft to Premera in the ASA. Because the ASA settles the relationship between Microsoft, Premera, and the Plan, the ASA falls within the plain meaning of § 1024(b)(4)'s disclosure requirements.

\* \* \*

[at 1269] Defendants also urge reversal because the Plan's members are not parties to the ASA, and other Plan documents available to Plaintiffs contained the relevant information found in the ASA. Opening Br. at 36, 42. Again, we must disagree. Nothing in § 1024(b)(4) conditions the disclosure requirement on plan participants being parties to the contract or obviates the disclosure requirement if the information provided in the contract is available elsewhere. *See* 29 U.S.C. § 1024(b)(4).

## **CONCLUSION**

Procedurally and substantively, Defendant's motion should be denied.

It also will be mooted by the intended filing of Plaintiff's Amended Complaint.

Although labeled as a Partial Motion to Dismiss, the motion actually seeks premature summary judgment, based upon a single document selected by Defendant which

is not the Plan sued upon nor does it contain a full description of relationships such as the Administrative Services Agreement and other documents. The motion has an obvious intent to thwart Plaintiff's right to conduct certain discovery, as supported by ample precedent.

The motion should be denied, and Plaintiff's intended amendment should be permitted.

Submitted this June 16, 2025.

*/s/ Ernest J. Istook, Jr.*
Ernest J. Istook, Jr.

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was emailed this June 16, 2025, to Defendant MetLife's attorneys of record at fhardy@grsm.com and ahermosillo@grsm.com.

*/s/ Ernest J. Istook, Jr.*