Ernest J. Istook, Jr. (Utah Bar #15868)
Jacob S. Gunter (Utah Bar #12732)
**HOWARD, LEWIS & PETERSEN, P.C.**
120 East 300 North Street, Provo, Utah 84606    HLP File No. 36,278
Telephone: (801) 373-6345
Istook@ProvoLawyers.com
Jacob@ProvoLawyers.com
*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| Nicole B. Mayor,<br><br>    *Plaintiff,*<br><br>vs.<br><br>Metropolitan Life Insurance Company, itself and as administrator of Union Pacific Corporation Nonagreement Life Insurance Plan 0149653;<br><br>Elizabeth F. Whited, as administrator of Union Pacific Corporation Nonagreement Life Insurance Plan;<br><br>Joshua K. Perkes, as administrator of Union Pacific Corporation Nonagreement Life Insurance Plan;<br><br>and<br><br>J-Doe, as administrator of Union Pacific Corporation Nonagreement Life Insurance Plan.<br><br>    *Defendants* | **AMENDED COMPLAINT**<br><br>Case No. 1:25-cv-00012-DBB-DAO<br><br><br>District Judge David Barlow<br><br>Magistrate Judge Daphne A. Oberg |

　　　　1.　　This Court has jurisdiction under the Employee Retirement Security Act of 1971 ("ERISA), 29 U.S.C. §1001, et. seq., including §1132, and 28 U.S.C. § 1331 as this case arises under the laws of the United States.

　　　　2.　　Plaintiff Nicole Bethay Mayor ("Nicole Mayor" or "Mrs. Mayor" or "Plaintiff") is an individual, residing in the State of Utah.

3. Defendant Metropolitan Life Insurance Company ("MetLife" or "Defendant") is a corporation which sells and provides life insurance, and which also serves as administrator of a plan it describes as the Union Pacific Nonagreement Life Insurance Plan 0149653 ("the Plan"), which is a nationwide plan that provides insurance and other benefits to employees of the Union Pacific Corporation and Union Pacific Railroad.

4. The Plan is an employee pension benefit plan as defined by ERISA, sponsored by Union Pacific Corporation for the benefit of its employees, including employees of its subsidiary, the Union Pacific Railroad.

5. Defendant Elizabeth F. Whited is an officer or former officer of Union Pacific Railroad, who for several prior years and until some unknown date in 2023 was plan administrator of the Plan, and who is sued in that capacity rather than as an individual.

6. Defendant Joshua K. Perkes is an officer of Union Pacific Railroad, who at some unknown date in 2023 succeeded Elizabeth F. Whited as plan administrator of the Plan, and who is sued in that capacity rather than as an individual.

7. Defendant J-Doe is a person whose identity is not known, but who may have been designated to succeed Joshua K. Perkes as plan administrator of the Plan, and who is sued in that capacity rather than as an individual.

8. MetLife and the plan sponsor (Union Pacific Corporation and its subsidiary, the Union Pacific Railroad) had agreements between them that have not been provided to Plaintiff, including what is categorized as an Administrative Services Agreement ("ASA") defining their relationship and obligations, including in regard to compliance with ERISA.

9. On information and belief, Defendant MetLife at all pertinent times was an agent of the plan administrator and an agent of the Plan for purposes of fulfilling the plan administrator's obligations, including under 29 U.S.C. §1132(c), to provide Plaintiff with documents and information regarding her claim for benefits and the denial of her claim; MetLife acted as an agent pursuant to actual grant of authority, implied authority, and/or its representation of having such authority.

10. On information and belief, Defendant MetLife had agreed with the plan administrator that MetLife would pay any ERISA penalties for failing to provide material under 29 U.S.C. §1132(c); Plaintiff is a third-party beneficiary of that agreement.

11. Casey James Mayor ("Casey Mayor" or "Mr. Mayor") is an individual who died on May 23, 2023, at the age of 38, and was married to Nicole Mayor at all times from February 13, 2007, until his death.

12. The official Certificate of Death determined that Mr. Mayor's death was accidental.

13. Mr. Mayor's death was accidental as defined by Utah law involving accidental death insurance coverage.

14. Casey Mayor was employed constantly by Union Pacific from 2007 until the time of his death. Mr. Mayor was a Plan participant and therefore a beneficiary in the Plan since about September 2007, when he resided in the State of Utah and began work there for Union Pacific. Mr. Mayor's participation included coverage for life insurance and accidental death coverage through the Plan; both coverages were issued by MetLife which also was financially liable to pay the benefits.

15. The aforesaid life and accidental death coverage remained in full force and effect ever since its issuance in 2007 while Mr. Mayor resided and worked for Union Pacific in the State of Utah, and all premiums were paid in-full and on-time.

16. MetLife has an inherent conflict of interest because it serves both as claims administrator of the Plan and was the entity which issued and was liable to make payment upon life insurance and accidental death coverage for plan participants. At all relevant times, MetLife was both the claims adjudicator and the payor for all claims involving that coverage.

17. Nicole Mayor was the sole beneficiary of said life insurance and accidental death coverage for her husband, Casey Mayor.

18. The accidental death coverage in this matter involved an insured plan and not a self-funded plan.

19. State law governed all portions of the accidental death coverage on Mr. Mayor which were not pre-empted by federal law. *Winchester v. Prudential Life Ins. Co. of America,* 975 F.2d 1479, 1486-7 (10th Cir., 1992).

20. Utah state law governed the accidental death coverage in this matter and the interpretation of any policy exclusions.

21. The accidental death coverage was for the principal amount of at least $897,000.00, no portion of which has been paid.

22. MetLife under the Plan had fiduciary obligations toward Mr. Mayor and toward his beneficiary, Mrs. Mayor, including the obligation to "discharge [its] duties with respect to a plan solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104.

23. Union Pacific's Human Resources Department, which was then headed by Defendant Whited or Defendant Perkes and which acted as the agent of the plan administrator, was contacted by Mrs. Mayor by email on December 8, 2023; in her email she requested a copy of the accidental death insurance policy of her late husband, but she was never provided a copy.

24. Mrs. Mayor nevertheless filed with MetLife a timely and proper claim for the accidental death coverage on her late husband.

25. MetLife denied the accidental death claim by letter dated June 27, 2024, received several days thereafter by Mrs. Mayor; the denial was based solely on MetLife's improperly seeking to invoke a policy exclusion.

26. Mrs. Mayor submitted a formal appeal of the denial on August 21, 2024, which the U.S. Postal Service certified was received by MetLife on August 23, 2024. The same submission requested that MetLife provide additional material and information, namely a complete copy of:

   a) The entirety of your records and reports created or referenced in regard to this claim and/or your denial.

   b) A complete copy of the policy and any attendant schedules.

   c) Copies of any and all communications regarding your consideration of this claim, including both internal communications and those with any third parties.

   d) Information of what you show as the inception date of the policy and Mr. Mayor's state of residence at that time.

27. MetLife re-denied the claim (citing the same grounds as before) by a letter which it dated September 9, 2024, but was not delivered until September 27, 2024. MetLife did not, however, provide the full additional material and information that had been requested in the

August 21, 2024, appeal, including the following failures to provide what had been requested:

    a) The only copy of a policy provided was marked as a "Certificate Number 29," dated January 1, 2016, identifying the policyholder as "Union Pacific Corporation," but MetLife provided no documents linking it to coverage of Mr. Mayor, the deceased.

    b) MetLife provided no copies of the policy as it existed on prior dates, nor subsequent dates, after January 1, 2016.

    c) MetLife provided a copy only of Union Pacific's "2024 Employee Flexible Benefits Guide," which obviously was not in force on Mr. Mayor's date of death in 2023

    d) MetLife omitted any declaration sheet or other item showing the dollar amount of the coverage of Mr. Mayor

    e) MetLife did not provide information about the original issuance of the policy and the policy terms [which would include any exclusions] at its inception in 2007, nor any subsequent time until the date of death

    28.    By follow-up letter to MetLife sent on Mrs. Mayor's behalf on November 7, 2024 (for which the U.S. Postal Service confirmed receipt), MetLife was explicitly asked to remedy these above-described failures, and also was asked to provide additional material, namely:

    a) The entirety of your administrative file regarding this claim.

    b) A copy of the Proof of Claim submitted by Mrs. Mayor, with all related material.

    c) A copy of Mr. Mayor's designation(s) of beneficiary.

    d) A copy of declarations showing the dollar amounts of coverage, including for accidental death, including the original amounts and any adjustments thereafter.

e) A full copy of the group policy AND of all documents regarding the coverage for Mr. Mayor specifically, in ALL their iterations from the 2007 inception until the date of death. This includes full copies of the group policy and of documents showing the personal coverage on Mr. Mayor:

   i) As they existed on the date of issuance

   ii) Any and all revisions, with full information regarding when and why any changes were made

f) A complete copy of Union Pacific's employee benefits documents as they existed at the time of the 2007 inception of coverage and all variations at all subsequent times to the date of death

g) Any and all communications with or regarding Mr. or Mrs. Mayor from the inception of the policy until today

29. MetLife never responded to the November 7, 2024, request, although the U.S. Postal Service verified that it had been delivered November 12, 2024. (Tracking receipt # 70192970000011168301).

30. The November 7, 2024, request was re-sent to MetLife on January 2, 2025, including information that the Postal Service had verified the delivery on November 12, 2024.

31. MetLife never responded to the January 2, 2025, re-sending, although the Postal Service verified that it was delivered on January 8, 2025 (Tracking receipt # 70192970000011168332).

32. Upon information and belief, the exclusion asserted by MetLife as grounds for denying the accidental death claim was not part of the policy covering Mr. Mayor when it was

issued, nor was it ever properly incorporated into the coverage on Mr. Mayor; MetLife has provided no information about policy revisions, despite Plaintiff's request for that information.

## FIRST CAUSE OF ACTION

### (Failure to provide information)

Plaintiff re-alleges and re-incorporates the above, and further states:

33. The plan administrator failed and refused to provide Plaintiff with information as ERISA requires them to do within 30 days, for which the plan administrator is liable for daily penalties of $110 pursuant to 29 U.S.C. §1132(c) (increased from $100 to $110 per day under the Debt Collection Improvement Act of 1996, 62   Fed. Reg. 40696), in addition to being required by the Court to provide Plaintiff with all material that should have been provided to her.

34. MetLife's failure to provide Plaintiff with this material, as agent for the plan administrator, was a failure of the plan administrator to provide the material, and the plan administrator therefore is liable for the penalties.

35. By a letter of September 9, 2024, MetLife confirmed its document-providing agency for the plan administrator when it wrote that it (MetLife) was responsible to provide Plaintiff, free of charge, with copies of all documents, records and other information relevant to her claim for benefits, and that related communications should be directed to MetLife's office.

36. In responding to Plaintiff's previously-described letters requesting information and documents (dated August 21, 2024, November 7, 2024, and January 2, 2025), MetLife never responded that those requests should be addressed separately to the plan administrator.

37. On information and belief, having agreed with the plan administrator that MetLife would pay any ERISA penalties for failing to provide material under 29 U.S.C. §1132(c), MetLife is also liable to Plaintiff to pay said penalties.

## SECOND CAUSE OF ACTION

### (Improper denial of claim)

Plaintiff re-alleges and re-incorporates the above, and further states:

38. MetLife's denial of the accidental death claim was contrary to law, an abuse of discretion, arbitrary and capricious, and relied upon an asserted exclusion which was either invalid or inapplicable, or had never been properly made a part of the policy.

39. Plaintiff is entitled to *de novo* review of her claim; no documents were provided to establish that MetLife received discretionary authority to assert otherwise; having failed to provide documents, MetLife is estopped from claiming that it possessed discretionary authority under ERISA.

## **PRAYER**

Wherefore, Plaintiff Nicole Mayor prays for relief as follows:

- An order of this Court requiring Defendants to immediately provide to Plaintiff the withheld material;

- Judgment against Defendants for statutory late fees, plus court costs, attorney fees and interest;

- Judgment against MetLife for the full amount of the accidental death coverage, believed to be $897,000.00, plus interest and any other augmentations, court costs and legal fees; and

- All other relief that may be just and equitable.

Submitted this August 5, 2025.


*/s/ Ernest J. Istook, Jr.*
**ATTORNEY FOR PLAINTIFF**

## **CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing was emailed this August 5, 2025, to Defendant MetLife's attorneys of record at fhardy@grsm.com and ahermosillo@grsm.com.


*/s/ Ernest J. Istook, Jr.*