UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
NORTHERN DIVISION

| | |
|---|---|
| NICOLE B. MAYOR,<br><br>    Plaintiff,<br><br>v.<br><br>METROPOLITAN LIFE INSURANCE COMPANY, itself and as administrator of Union Pacific Corporation Nonagreement Life Insurance Plan 0149653, et al.,<br><br>    Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR DISCOVERY (DOC. NO. 68) AND SUSTAINING IN PART AND OVERRULING IN PART OBJECTION TO ADMINISTRATIVE RECORD (DOC. NO. 69)**<br><br>Case No. 1:25-cv-00012<br><br>District Judge David Barlow<br><br>Magistrate Judge Daphne A. Oberg |

Nicole Mayor brought this action against Metropolitan Life Insurance Company and two officers of Union Pacific Railroad, as administrators of an employee benefit plan her husband participated in before his death.[1]  Ms. Mayor asserts claims under the Employee Retirement Income Security Act[2] for failure to provide required information and for improper denial of accidental death benefits.[3]  This dispute centers on Ms. Mayor's objections to the completeness of the administrative record[4] and her request for

---

[1] (Compl., Doc. No. 1.)

[2] 29 U.S.C. § 1001 et seq.

[3] (Am. Compl. ¶¶ 33–39, Doc. No. 35.)

[4] (*See* Administrative Record: Bates Nos. AR 000001–000634 (AR), Doc. Nos. 67–67-5.)

additional discovery.[5]  The defendants oppose, arguing Ms. Mayor fails to show the record is incomplete and she seeks nonexistent documents, documents already in the record, or impermissible extra-record discovery.[6]

The motion for discovery is granted in part and denied in part.  And in view of this ruling, Ms. Mayor's objection to the record is sustained in part and overruled in part.[7] Ms. Mayor largely fails to justify her requests for discovery relating to her benefits denial claim.  She has not shown extra-record discovery of materials relating to MetLife's conflict of interest or failure to consider Utah law is necessary.  However, through some requests, she seeks information that should have been included in the record or that would aid the court in determining the applicable standard of review.  And Ms. Mayor has justified the need for discovery on her statutory damages claim.  Accordingly, the defendants must supplement the administrative record as described below.

---

[5] (Pl.'s Objs. to Administrative Record, Doc. No. 69; Pl.'s Mot. for Disc. (Mot.), Doc. No. 68.)

[6] (Def. MetLife's Resp. to Mot (MetLife Opp'n), Doc. No. 71; Union Pacific Defs.' Resp to Mot. (Union Pacific Opp'n), Doc. No. 73.)

[7] Ms. Mayor bases her objection on the arguments in her motion for discovery.  (*See* Pl.'s Objs. to Administrative Record 1, Doc. No. 69 (asserting the administrative record is incomplete and requesting the court "direct MetLife to supplement [it] to include the material described in [her] Motion for Discovery").)  Accordingly, where her motion is granted, her objection is sustained; and where her motion is denied, her objection is overruled.

## BACKGROUND

According to the amended complaint, Union Pacific employed Ms. Mayor's husband, Casey Mayor, until his accidental death in May 2023.[8]  Through Union Pacific, Mr. Mayor participated in an employee benefit plan issued by MetLife, which included life insurance and accidental death coverage.[9]  The plan is subject to ERISA's statutory requirements.[10]  And during Mr. Mayor's participation in the plan, two officers of Union Pacific (the individuals named as defendants) served as the plan administrators.[11] MetLife allegedly acted as Union Pacific's agent for the purpose of fulfilling its statutory obligations to provide information to beneficiaries upon request, and agreed to pay any ERISA penalties for failure to do so.[12]

In her amended complaint, Ms. Mayor alleges that after her husband's death, she requested a copy of his accidental death insurance policy from Union Pacific, but never received it.[13]  She then submitted a claim for accidental death benefits, as the sole beneficiary.[14]  In June 2024, MetLife (as claim administrator) denied the claim based on

---

[8] (Am. Compl. ¶¶ 11–14, Doc. No. 35.)

[9] (*Id.* ¶¶ 3, 14.)

[10] (*Id.* ¶ 4.)

[11] (*Id.* ¶¶ 5–7, 9.)

[12] (*Id.* ¶¶ 8–10.)

[13] (*Id.* ¶ 23.)

[14] (*Id.* ¶¶ 17, 24.)

a policy exclusion.[15]  In the denial, MetLife explained the policy excluded benefits payments for deaths caused by the "voluntary" use of illicit drugs—and records indicated Mr. Mayor's death was due to fentanyl.[16]  Ms. Mayor appealed the denial and requested additional policy information from MetLife.[17]  MetLife denied her appeal and failed to provide all the information she requested.[18]

In this action, Ms. Mayor claims the individual defendants (the plan administrators) are liable for statutory damages because Union Pacific, through MetLife, failed to provide plan information as required under ERISA.[19]  In addition, Ms. Mayor claims MetLife improperly based the denial of her claim on an invalid or inapplicable policy exclusion.[20]  After the defendants filed their answers,[21] MetLife filed the administrative record.[22]

---

[15] (*Id.* ¶¶ 24–25.)

[16] (AR 484–85.)

[17] (Am. Compl. ¶ 26, Doc. No. 35; AR 488–91.)

[18] (Am. Compl. ¶¶ 27–31, Doc. No. 35; AR 498–99.)

[19] (Am. Compl. ¶¶ 33–37, Doc. No. 35.)  The court dismissed this claim as to MetLife but not as to the individual plan administrator defendants.  (Mem. Decision & Order Granting Def.'s Mot. to Dismiss, Doc. No. 62.)

[20] (Am. Compl. ¶¶ 38–39, Doc. No. 35.)

[21] (Def. MetLife's Answer to Am. Compl., Doc. No. 46; Union Pacific Defs.' Am. Answer to Am. Compl., Doc. No. 60.)

[22] (AR 1–634.)

Ms. Mayor objects to the record's completeness and moves to conduct discovery via seventeen proposed document requests.[23]  According to Ms. Mayor, these requests fall within four main areas of permissible ERISA discovery: (i) MetLife's inherent conflict of interest as claim administrator and claim payor (requests 4, 5, and 14 through 17); (ii) documents not in the record that should have been, including the "actual ERISA plan," documents granting MetLife discretionary authority to decide benefits claims, and documents establishing MetLife's failure to consider whether Mr. Mayor's drug ingestion was "voluntary" under Utah law (requests 1 through 3 and 6 through 12); (iii) documents the defendants refer to in their pleadings (requests 1 through 11); and (iv) documents relating to MetLife's role in responding to requests for plan information for Union Pacific (request 13).[24]

## DISCUSSION

Ms. Mayor's motion is granted in part and denied in part, and her objection is sustained in part and overruled in part.  Ms. Mayor largely fails to justify discovery relating to her denial-of-benefits claim, except where she seeks information that should have been included in the record or would aid in determining the applicable standard of review.  But Ms. Mayor appropriately requests information relating to her statutory damages claim.

---

[23] (Pl.'s Objs. to Administrative Record, Doc. No. 69; Mot. 2, 22–24, Doc. No. 68.)

[24] (Mot. 2–3, Doc. No. 68.)  Although it is unclear which specific requests pertain to each area of discovery, these appear to be the intended categorizations, based on the briefing and the language of the requests.  (*See id.* at 22–24.)

A. <u>Discovery Relating to Benefits Denial Claim</u>

First, Ms. Mayor seeks discovery relating to her "benefits denial" claim. ERISA gives plan beneficiaries the right to judicial review of benefits denials.[25] In conducting this review, courts are generally limited to the administrative record,[26] which includes "the materials compiled by the administrator in the course of making his decision."[27] Courts cannot consider "materials outside the administrative record where the extra-record materials sought to be introduced relate to a claimant's eligibility for benefits."[28] Supplementing the record may be appropriate,[29] but only in "exceptional circumstances" and "unusual" cases.[30] Ultimately, discovery requests in ERISA cases are subject to Rule 26(b) of the Federal Rules of Civil Procedure and must comport with ERISA's goals of fair and efficient claim resolution.[31]

---

[25] *See* 29 U.S.C. § 1132(a)(1)(B).

[26] *See Murphy v. Deloitte & Touche Grp. Ins. Plan*, 619 F.3d 1151, 1157 (10th Cir. 2010) (citation omitted).

[27] *Hall v. UNUM Life Ins. Co. of Am.*, 300 F.3d 1197, 1201 (10th Cir. 2002).

[28] *Murphy*, 619 F.3d at 1162.

[29] *See id.* (noting, in an abuse-of-discretion review, that the general restriction against extra-record materials does not "conclusively prohibit" discovery on an administrator's conflict of interest); *Hall*, 300 F.3d at 1202–03 (explaining that courts conducting *de novo* review are ordinarily restricted to the administrative record unless "circumstances clearly establish" additional materials are "necessary" and identifying circumstances that may justify supplementation).

[30] *Hall*, 300 F.3d at 1203.

[31] *See Murphy*, 619 F.3d at 1162–63 (explaining that Rule 26(b) governs "discovery requests in ERISA cases," and unnecessary, overbroad, and burdensome "discovery that slows the efficient resolution of an ERISA claim" should not be permitted); *id.* at

Ms. Mayor seeks documents relating to three areas: (1) MetLife's inherent conflict of interest as administrator and payor of benefits claims; (2) the administrative record's completeness; and (3) documents referenced in the defendants' pleadings. Each is discussed in turn.  In short, Ms. Mayor fails to justify her requests in the first category, and only partially justifies her requests in the second and third.

### 1.  MetLife's "Dual Role" Conflict of Interest (Requests 4, 5, and 14–17)

To start, through requests 4, 5, and 14 through 17, Ms. Mayor seeks discovery into MetLife's inherent conflict of interest as claim administrator and claim payor.  But she fails to show why this discovery is necessary.  When an entity both insures (pays claims) and administers (makes benefit payment decisions for) a benefits plan, it operates "under an inherent dual role conflict of interest."[32]  In reviewing benefits denials, courts consider such conflicts, allocating more or less weight depending on the seriousness.[33]  For instance, if an administrator "has a history of biased claims administration," the "conflict weights more heavily against the administrator."[34]  And without discovery, "a claimant may not have access to the information necessary to

---

1164 (explaining that, in exercising their "substantial discretion in handling discovery requests," district courts "must always bear in mind that ERISA seeks a fair and informed resolution of claims" and "to ensure a speedy, inexpensive, and efficient resolution of those claims").

[32] *Murphy*, 619 F.3d at 1154; *see also Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 112 (2008) (explaining that a conflict of interest arises when "a plan administrator both evaluates claims for benefits and pays benefits claims").

[33] *See Glenn*, 554 U.S. at 116.

[34] *Murphy*, 619 F.3d at 1161 (citing *Glenn*, 554 U.S. at 117).

establish the seriousness of the conflict."[35]  Accordingly, the general restriction against extra-record materials "does not conclusively prohibit a district court from considering extra-record materials related to an administrator's dual role conflict of interest."[36]

In *Murphy v. Deloitte & Touche Group Insurance Plan*, the Tenth Circuit noted that Rule 26(b) governs discovery requests in ERISA cases, including those targeting a plan administrator's dual-role conflict of interest.[37]  The court emphasized that parties in an ERISA action should not be allowed "to engage in unnecessarily broad discovery that slows the efficient resolution of an ERISA claim."[38]  Noting that "discovery related to a conflict of interest may often prove inappropriate," the court identified some non-exclusive factors to aid the inquiry: (1) that "ERISA seeks a fair and informed resolution of claims"; (2) that ERISA also "seeks to ensure a speedy, inexpensive, and efficient resolution of those claims"; and (3) the necessity of the discovery, including its benefits, burdens, and costs.[39]

---

[35] *Id.* at 1158.

[36] *Id.* at 1162.

[37] *See id.* (explaining courts "must apply [Rule] 26(b) to discovery requests related to a dual role conflict of interest, just as we would apply that rule to other discovery requests).

[38] *Id.* at 1162–63.

[39] *Id.* at 1163–64.

Ms. Mayor proposes several discovery requests directed at MetLife's dual-role conflict.[40]  In requests 4 and 5, she broadly seeks all documents "creating, revising, or defining" MetLife's status as claim administrator and claim payor.[41]  In request 14, she seeks "all documents describing and/or regarding MetLife's policies, procedures, manuals, memoranda and guidelines . . . for handling claims in which it is both claims administrator and claims payor, including any impact upon deciders' compensation or performance evaluations."[42]  In request 15, Ms. Mayor seeks all communications between the defendants "describing how MetLife should handle claims" in its dual role.[43] Request 16 relates to how MetLife "recognized" and "addressed" its conflict in regard to Ms. Mayor's benefits claim.[44]  And in request 17, Ms. Mayor seeks documents "reflecting the financial reserves for the claim, the impact of claims payment, and the identity of persons who knew the reserves."[45]

---

[40] Ms. Mayor identifies requests 14 through 17 as seeking conflict-of-interest information, although she spends no time discussing them.  (Mot. 6, Doc. No. 68.)  Nor does she discuss requests 4 and 5, but the language of these requests suggests they properly fall within this "conflict of interest" category.  (*See id.* at 22.)

[41] (*Id.* at 22.)

[42] (*Id.* at 24.)

[43] (*Id.*)

[44] (*Id.*)

[45] (*Id.*)

Ms. Mayor fails to justify these requests.[46]  She generally contends discovery into MetLife's dual-role conflict is proper because *Murphy* guides the analysis, on remand the *Murphy* court allowed some discovery on the issue, and other courts have as well.[47] But Ms. Mayor never substantively explains the necessity of her own discovery requests.  Indeed, she does not address or apply any of the factors the *Murphy* court identified.  MetLife acknowledges its dual role as claim administrator and claim payor.[48] But this sole fact—along with general assertions that *Murphy* governs and courts sometimes permit discovery into conflicts of interest—does not justify extra-record discovery in this case.[49]

Ms. Mayor's only attempt to address the substance of her own requests is brief and uncompelling.  She highlights that, on remand in *Murphy*, the district court permitted discovery on the "policies and procedures used by MetLife to make decisions in its claims assessment process, including any safeguards to ensure against pressure on

---

[46] *See Murphy*, 619 F.3d at 1163 ("The party moving to supplement the record or engage in extra-record discovery bears the burden of showing its propriety.").

[47] (Mot. 5–8, Doc. No. 68.)

[48] (MetLife Opp'n 8, Doc. No. 71.)

[49] The court decisions Ms. Mayor cites are unhelpful where she fails to explain how extra-record discovery into the scope of MetLife's conflict of interest is necessary beyond the fact that the conflict exists.  *Cf. Gundersen v. Metro. Life Ins. Co.*, No. 2:10-cv-50, 2011 U.S. Dist. LEXIS 12394, at *16–17 (D. Utah Feb. 7, 2011) (unpublished) (explaining the plaintiff showed he needed information "beyond the bare existence" of the conflict, where the record presented "serious issues" about the procedures used and unclear plan interpretations); *Benson v. Hartford Life & Acc. Ins. Co.*, No. 2:10-CV-00275, 2011 U.S. Dist. LEXIS 9808, at *16–17 (D. Utah Jan. 28, 2011) (unpublished) (similar).

employees."[50]  Then, without explanation, Ms. Mayor states: this is relevant "to the instant case's discovery regarding conflict-of-interest" as "reflected in [her] itemized requests 14–17."[51]  It is unclear what this means.  Setting aside that the *Murphy* court's decision on remand is nonbinding, the language Ms. Mayor emphasizes bears no resemblance to requests 15, 16, or 17 here.  And it is far narrower than request 14, which reflects a broad pursuit of all documents regarding MetLife's dual role.[52]

Ultimately, Ms. Mayor fails to justify her requests under *Murphy*'s factors.  Ms. Mayor does not challenge the defendants' characterization of this case as relatively straightforward—where the denial was based on a policy exclusion turning on the definition of "voluntary."  MetLife's dual-role conflict is apparent on the record, making the adverse financial interest obvious.  Ms. Mayor does not explain why she needs information beyond this.  And it is unclear how the proposed discovery requests would aid a fair and informed judicial review.  Permitting this discovery would impede an efficient resolution of this case where there is no apparent benefit from it.[53]

---

[50] (Mot. 6, Doc. No. 68 (quoting *Murphy v. Deloitte & Touche Grp. Ins. Plan*, No. CIV 08-25, 2010 U.S. Dist. LEXIS 144434, at *16 (D.N.M. Oct. 1, 2010) (unpublished)).)

[51] (*Id.*)

[52] As noted above, request 14 seeks "all documents describing and/or regarding MetLife's policies, procedures, manuals, memoranda and guidelines . . . for handling claims" in this dual role, "including any impact upon deciders' compensation or performance evaluations."  (Mot. 24, Doc. No. 68.)

[53] *See Murphy*, 619 F.3d at 1163 ("[W]hile discovery may, at times, be necessary to allow a claimant to ascertain and argue the seriousness of an administrator's conflict, Rule 26(b), although broad, has never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition").

Accordingly, Ms. Mayor's motion is denied as to requests 4, 5, and 14 through 17.  Ms. Mayor fails to show the need for extra-record discovery relating to MetLife's apparent dual-role conflict of interest.

### 2.  Record Completeness (Requests 1–3 and 6–12)

Next, Ms. Mayor seeks to conduct discovery into the record's completeness.  As noted above, in ERISA cases, the administrative record must include "the materials compiled by the administrator in the course of making his decision" to deny benefits.[54] Per ERISA's regulations, this includes documents "submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination."[55]  Here, Ms. Mayor seeks three categories of documents she contends should be in the record: the "actual" plan documents; documents indicating Union Pacific granted MetLife discretionary authority to decide benefits claims; and documents establishing MetLife failed to consider the definition of "voluntary" under Utah law.[56]

### a.  "Actual" Plan Documents (Requests 1–3 and 8–12)

In requests 1 through 3 and 8 through 12, Ms. Mayor seeks all plan documents, including all documents comprising "the Plan," "any other applicable plan or policy documents," "instruments governing the Plan," and "related documents" as referenced

---

[54] *Hall*, 300 F.3d at 1201.

[55] *See* 29 C.F.R. § 2560.503-1(m)(8)(ii).

[56] (Mot. 8–14, Doc. No. 68.)

in the defendants' answers, as well as "the insurance policy."[57]  By Ms. Mayor's telling, MetLife has not provided "the actual ERISA plan in this case" because the record includes only a summary plan description but no master plan document.[58]  She argues summary descriptions and master documents are separate, required documents under ERISA.[59]  In response, the defendants contend they have produced all governing plan documents, which includes the insurance policy, the certificate of insurance, and the summary plan description.[60]  The defendants argue Ms. Mayor's speculation that other plan documents exists does not justify discovery—especially for documents unrelated to her death benefits claim.[61]

Ms. Mayor's suggestion that there must be a master plan document appears speculative.  Although every ERISA employee benefit plan must be "established and maintained pursuant to a written instrument,"[62] Ms. Mayor provides no authority supporting the premise that the instrument must be a master plan document.  Nor does

---

[57] (*Id.* 22–23.)

[58] (*Id.* at 9–10.)

[59] (*Id.*)

[60] (MetLife Opp'n 4, Doc. No. 71 (referencing AR 1–15 (group insurance policy for Union Pacific issued January 1, 2004); AR 16–107 (certificate of insurance dated January 1, 2016); AR 108–383 (2023 Employee Flexible Benefits Guide)); Union Pacific Opp'n 8, Doc. No. 73 (explaining the 2023 Employee Flexible Benefits Guide describes the official plan documents as the guide itself along with insurance contracts and the group insurance policy).)  According to the defendants, the "2023 Employee Flexible Benefits Guide" (AR 108–383) is the summary plan description.

[61] (MetLife Opp'n 4, Doc. No. 71; Union Pacific Opp'n 8, Doc. No. 73.)

[62] 29 U.S.C. § 1102(a)(1).

13

she address the defendants' assertions that the governing plan documents consist of the insurance policy, certificate of insurance, and summary plan description.  Instead, Ms. Mayor merely suggests a summary plan description is not enough.[63]  But the out-of-circuit authority she cites contradicts her position.[64]  And as the Tenth Circuit recognizes, provisions contained only in a summary plan description may be enforceable.[65]

Although Ms. Mayor has not shown specific plan documents are missing, there is no question all plan documents MetLife compiled in the course of denying Ms. Mayor's claim should be in the record.[66]  Where this is critical to an effective review of an ERISA claim, the defendants must review the record to ensure it contains all plan documents compiled in the course of denying the claim.  If any documents are missing, the defendants must supplement the record accordingly.  If the record is complete without supplementation, the defendants must provide a verified statement to Ms. Mayor

---

[63] (Pl.'s Reply Regarding Mot. (Reply) 3–4, Doc. No. 76 (referring to *CIGNA Corp. v. Amara*, 563 U.S. 421 (2011)).)

[64] (Mot. 11, Doc. No. 68); *Harris-Frye v. United of Omaha Life Ins. Co.*, No. 1:14-cv-72, 2015 U.S. Dist. LEXIS 126787, at *27 (E.D. Tenn. Sept. 21, 2015) (unpublished) (explaining that, according to the Sixth Circuit, "nothing in" *CIGNA Corp. v. Amara* "prevents a document from functioning both as the ERISA plan and as [a summary plan description], if the terms of the plan so provide" (citations and emphasis omitted)).

[65] *See, e.g.*, *Holmes v. Colorado Coal. for Homeless Long Term Disability Plan*, 762 F.3d 1195, 1200 (10th Cir. 2014) (explaining "that a provision granting discretion to the plan administrator contained only in the summary plan description was enforceable because it did not conflict with the plan and because the summary plan description expressly stated that it was part of the plan").

[66] *See Hall*, 300 F.3d at 1201; 29 C.F.R. § 2560.503-1(m)(8)(ii).

indicating the record includes all plan documents compiled in the course of denying her claim.  In other words, the motion is granted as to requests 1 through 3 and 8 through 12, but only to the extent Ms. Mayor seeks all plan documents MetLife compiled in the course of making its benefits decision, as required under ERISA.  To the extent Ms. Mayor requests documents beyond that scope, the motion is denied.

### b.   Documents Granting Discretionary Authority (Request 6)

Next, in request 6, Ms. Mayor seeks documents whereby Union Pacific granted MetLife discretionary authority to handle her benefits claim.[67]  "Benefits denial" claims under ERISA are "reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."[68]  If this discretionary authority exists, "the proper standard of review is abuse of discretion."[69]

Ms. Mayor contends these "discretionary authority" documents are necessary because nothing in the record shows Union Pacific granted this authority to MetLife.[70] She suspects a grant of discretionary authority might be in the plan documents, service agreements, or elsewhere—and that MetLife's discretion may be limited or

---

[67] (Mot. 23, Doc. No. 68.)

[68] *Murphy*, 300 F.3d at 1200 (quoting *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989)).

[69] *Id.*

[70] (Mot. 11–13, Doc. No. 68.)

conditional.[71]  She argues judicial review of her claim should be *de novo* unless the

defendants can produce such evidence.[72]

In response, the defendants contend the summary plan description explicitly

grants MetLife discretionary authority, highlighting the following provision:

> In carrying out their respective responsibilities under the plan, the Plan
> Administrator and *other plan fiduciaries* shall have discretionary authority to
> make factual findings, interpret the terms of the plans, and determine
> entitlements to benefits in accordance with the terms of the plans. Any
> finding, interpretation, or determination made pursuant to such discretionary
> authority shall be given full force and effect unless it can be shown that the
> finding, interpretation or determination was arbitrary and capricious.[73]

In addition, the defendants highlight a second provision:

> For all Life and [Accidental Death and Dismemberment (AD&D)] Insurance
> Plan claims and appeals, Met[Life] *has been* delegated the exclusive and
> discretionary right to make factual findings, interpret the terms of the Plan,
> and determine eligibility for and entitlement to Life and AD&D Insurance
> Plan benefits in accordance with the terms of the Plan. Any finding,
> interpretation or determination made pursuant to such discretionary
> authority shall be given full force and effect, unless it can be shown that the
> finding, interpretation or determination was arbitrary and capricious. The
> decisions of Met[Life] are conclusive and binding.[74]

---

[71] (*Id.* at 12.)

[72] (*Id.*)

[73] (MetLife Opp'n 5, Doc. No. 71 (quoting AR 364) (emphasis added).)

[74] (*Id.* (quoting AR 322) (emphasis added); Union Pacific Opp'n 5–6, Doc. No. 73
(quoting AR 322–23) (emphasis added).)

According to the defendants, where these provisions explicitly granted MetLife discretionary authority to decide Ms. Mayor's claim, abuse-of-discretion review applies and there is no basis for additional discovery on the matter.[75]

The defendants overstate the clarity and force of the two provisions they lean on. While the first recognizes that Union Pacific and "other plan fiduciaries" have discretion, it says nothing of MetLife specifically.  And while the second provides that discretionary authority "has been" delegated to MetLife, this language suggests other documents may memorialize the actual grant of authority.[76]  Where the defendants have not identified the documents explicitly granting that authority, there may be some question as to the applicable standard of review.[77]

And the question at issue is whether discovery relating to the applicable standard of review is proper—not what standard of review applies to this case at this time.[78]  In

---

[75] (MetLife Opp'n 5, Doc. No. 71; Union Pacific Opp'n 5–6, Doc. No. 73.)  In their opposition, the individual defendants ask for a protective order precluding Ms. Mayor from seeking extra-record discovery.  (Union Pacific Opp'n 7, Doc. No. 73.)  But the defendants cannot make this request in a response brief.  *See* DUCivR 7-1(a)(3) ("A party may not make a motion . . . in a response or reply.  Any motion must be separately filed.").

[76] (AR 322–23.)

[77] *See Holmes*, 762 F.3d at 1200 ("[W]here the relevant term does not appear in the plan, it is not 'necessarily . . . enforce[able] . . . as the terms of the plan itself.'" (quoting *CIGNA Corp.*, 463 U.S. at 437)).

[78] *See H.R. v. United Healthcare Ins. Co.*, No. 2:21-cv-00386, 2022 U.S. Dist. LEXIS 184379, at *5 n.25 (D. Utah Oct. 6, 2022) (unpublished) (explaining that where "both de novo and abuse of discretion review allow supplementing the ERISA record upon a showing of necessity," determining the proper standard of review was unnecessary on the plaintiffs' discovery motion).

request 6, Ms. Mayor seeks documents that will aid in determining what standard of review ultimately applies.  Put differently, the request does not target extra-record materials intended to challenge the denial of benefits.[79]  It seeks information related to (and necessary to determine) the applicable standard for reviewing MetLife's denial of benefits.[80]  A correct standard of review promotes fair and informed resolutions.[81]  And where it seems only a few documents are at issue, this discovery does not hinder ERISA's goal of speedy, inexpensive, and efficient resolutions.[82]

Accordingly, the motion is granted as to request 6, but only to the extent it seeks documents whereby Union Pacific granted MetLife discretion in handling accidental death benefits claims.  As before, if the defendants have already produced all responsive documents in accordance with this order, they must provide a verified statement indicating as much.

---

[79] See Murphy, 619 F.3d at 1158, 1162 (holding courts are prohibited from "considering materials outside the administrative record where the extra-record materials sought to be introduced relate to a claimant's eligibility for benefits").

[80] See, e.g., H.R., 2022 U.S. Dist. LEXIS 184379, at *5 ("'[G]iven the variety of ERISA cases which are brought' and the 'varied situations in which the administrative record alone may be insufficient to provide proper . . . review,' federal courts have discretion to admit additional evidence where . . . the evidence is 'necessary' to the court's review." (quoting Hall, 300 F.3d at 1202–03 and Murphy, 619 F.3d at 1164)).

[81] See Murphy, 619 F.3d at 1164.  Indeed, this information may benefit the defendants' interpretation of what standard of review applies.  See Hall, 300 F.3d at 1202 n.3 (noting that "supplementation may also be warranted in order to protect the plan administrator").

[82] See Murphy, 619 F.3d at 1164.

c. <u>Documents Establishing MetLife Failed to Consider Utah Law (Request 7)</u>

Next, in request 7, Ms. Mayor seeks documents establishing MetLife's failure to consider the term "voluntary" as defined under Utah law.[83]  Ms. Mayor explains that the policy only excludes deaths caused by voluntary drug use.  She contends MetLife abused its discretion by ignoring the legal authority she provided on appeal defining this term to mean "knowing."[84]  Ms. Mayor argues discovery is necessary to establish whether MetLife considered this definition of "voluntary" under Utah law.[85]

Ms. Mayor has not shown this extra-record discovery is necessary.[86]  If, as Ms. Mayor contends, the record shows MetLife abused its discretion by failing to consider Utah law, additional discovery is unnecessary.  The record is sufficient as it stands.  Accordingly, her motion is denied as to request 7.

---

[83] (Mot. 13, Doc. No. 68.)  Although this is how Ms. Mayor describes request 7, the request itself appears broader.  (*See id.* at 23 (request 7 seeking "[a]ll documents" regarding MetLife's determination of the "proper choice of law," including "all documents regarding the applicability of Utah law, as raised by [Ms. Mayor] and contained in the [a]dministrative [r]ecord, including any attorney-client communications," and "all documents relating to how MetLife 1) recognized and 2) addressed [Ms. Mayor's] communications that the deceased's drug ingestion was not 'voluntary' under Utah law.").)

[84] (*Id.* at 13.)  Specifically, Ms. Mayor explains that, under Utah law, consumption of a non-prescription drug is only "voluntary" if the person had knowledge of the actual substance ingested (fentanyl), which she argues the record clearly shows her husband did not have.  (*Id.* at 14.)

[85] (*Id.* at 13–14.)

[86] *See Hall*, 300 F.3d at 1203 (explaining that the party seeking to supplement the record bears the burden of showing how the evidence is necessary to the district court's review).

d.  Exhibit A to MetLife's Response Brief

Finally, and somewhat relatedly, Ms. Mayor notes in reply that MetLife attached an exhibit to its response brief that is not in the record, in support of its argument that Nebraska law applies to her benefits claim.[87]  Specifically, MetLife attached a document entitled "Application for Group Insurance," explaining the document (together with the group policy) "'constitutes the entire contract' between MetLife and Union Pacific" and "evidences that Nebraska law applies."[88]  MetLife contends the application is incorporated into the group policy but is not part of the administrative record because it "is not typically produced as a plan document."[89]  Ms. Mayor argues MetLife effectively admits that "additional relevant material" exists by asking the court to rely on this application and, ultimately, nothing links this document to the plan in this case.[90]

The existence of this application does not establish additional documents exist that, as a rule, should have been included in the record.  However, MetLife's reliance on

---

[87] (Reply 3, Doc. No. 76.)  Ms. Mayor does not clearly explain what discovery request this document relates to.  And while it seems to relate to request 7, Ms. Mayor's motion narrowed that discovery request to focus on documents relating to Utah law, as noted above.  Alternatively, the document at issue appears connected to Ms. Mayor's requests for plan-related documents where MetLife contends it is incorporated into the group policy, as explained here.  For clarity, then, the court addresses this document separately.

[88] (MetLife Opp'n 6 n.5, Doc. No. 71 (quoting AR 7 ("This Policy and the application of the Employer constitute the entire contract between the parties."); Ex. A to MetLife Opp'n, Doc. No. 71-1 ("Group Policy forms will be issued for delivery in and governed by the laws of Nebraska.")).)

[89] (*Id.* at n.5.)

[90] (Reply 4, Doc. No. 76.)

this application in its briefing suggests MetLife considered (or should have considered) this document in the course of making its benefits determination.  Notably, MetLife cites no other document currently in the record supporting its theory that Nebraska law applies to Ms. Mayor's benefits claim.  Accordingly, the application must be included in the administrative record.  MetLife is ordered to supplement the administrative record to include Exhibit A to its response brief.

### 3.  Documents Referenced in Defendants' Pleadings (Requests 1–11)

Ms. Mayor provides additional rationale supporting requests 1 through 11, but this rationale does not change the determinations (explained above) as to these requests.  According to Ms. Mayor, in requests 1 through 11, she seeks documents the defendants referenced in their pleadings.[91]  She generally contends documents referenced in the defendants' pleadings must be included in the record because they are relevant to MetLife's benefits determination, whether or not MetLife relied on them.[92]

Specifically, in requests 1 through 3 and 8 through 11, Ms. Mayor seeks all documents referred to as "the Plan," "any other applicable plan or policy documents," "documents and instruments governing the Plan," and "related documents" referred to in the defendants' answers.[93]  As explained above, these requests are granted but only to the extent they seek documents MetLife compiled in the course of making its decision to

---

[91] (Mot. 19, Doc. No. 68.)

[92] (*Id.* at 19–20.)

[93] (*See id.* at 22–23.)

21

deny Ms. Mayor's death benefits claim.[94]  Although Ms. Mayor argues the defendants' pleadings demonstrate the existence of additional relevant documents that must be produced pursuant to these requests, she relies on generic references and does not identify these documents.

Moreover, in requests 4 through 7, Ms. Mayor does not actually seek documents MetLife referred to in its answer.  She seeks documents relating to certain phrases MetLife used.  For example, Ms. Mayor seeks documents relating to MetLife's status as "Claim Administrator" and "funder" (requests 4 and 5), granting MetLife "discretion" in handling claims (request 6), and regarding MetLife's determination of the "proper choice of law" (request 7).[95]  But Ms. Mayor has not shown how MetLife's use of these words or phrases indicates additional documents exist or justifies extra-record discovery.  As explained above, Ms. Mayor fails to justify extra-record discovery into MetLife's dual-role conflict and failure to consider Utah law.  The court also ordered MetLife to supplement the record with the application document it relied on for choice-of-law purposes.  And the court granted request 6, but only to the extent it seeks documents whereby Union Pacific granted MetLife discretion in handling accidental death benefits

---

[94] *See Hall*, 300 F.3d at 1201 (explaining that the administrative record must include "the materials compiled by the administrator in the course of making his decision" to deny benefits); *see also* 29 C.F.R. § 2560.503-1(m)(8)(ii) (providing that the materials compiled includes documents "submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination.").

[95] (Mot. 22–23, Doc. No. 68.)

claims.  MetLife's use of these phrases in its answer does not alter those determinations.

B.  Discovery Relating to Statutory Damages Claim (Request 13)

Finally, Ms. Mayor seeks documents relating to her statutory damages claim: that Union Pacific, through MetLife as its agent, violated ERISA by failing to comply with her requests for plan information.[96]  Her motion is granted as to this request—to the extent agreements between Union Pacific and MetLife exist (which have not already been produced) relating to MetLife's role in responding to information requests by plan participants or beneficiaries.

Under ERISA, plan administrators must, "upon written request of any participant or beneficiary," furnish a plan summary, description, and all other agreements or "instruments under which the plan is established or operated."[97]  Failing or refusing to comply with such requests can result in the plan administrator being liable to the participant or beneficiary for up to $110 per day "from the date of such failure or refusal."[98]  Typically, only plan administrators can be liable for failing to provide information as required by ERISA.[99]  But if another person acts as an agent to the plan

---

[96] (Mot. 14, Doc. No. 68.)  Ms. Mayor does not identify request 13 specifically, but this appears to be the request applicable to statutory damages.  (*See id.* at 24.)

[97] 29 U.S.C. § 1024(b)(4).

[98] 29 U.S.C. § 1132(c)(1); *see also* 29 C.F.R. § 2575.502c–1 (adjusting amount from $100 to $110).

[99] *See Thorpe v. Ret. Plan of Pillsbury Co.,* 80 F.3d 439, 444 (10th Cir. 1996) ("Such causes of action may be brought only against designated plan administrators.");

administrator to carry out these statutory obligations, that person's failure to provide information could be imputed to the plan administrator.[100]

In request 13, Ms. Mayor seeks "all record-keeping agreements between Union Pacific and MetLife."[101]  She argues this information is relevant to her allegation that MetLife acted as Union Pacific's agent for purposes of responding to information requests and failing to comply with her requests.[102]  In response, MetLife contends the group policy is the governing agreement describing its relationship with Union Pacific. And neither the policy, the certificate of insurance, nor the summary plan description designate MetLife as Union Pacific's agent for statutory records request purposes.[103]

---

*McKinsey v. Sentry Ins.*, 986 F.2d 401, 403 (10th Cir. 1993) ("[W]e agree with the district court that Sentry was not the plan administrator and, therefore, cannot be held liable under § 1132(c)."). The administrator is defined as "the person specifically so designated by the terms of the instrument under which the plan is operated."  29 U.S.C. § 1002(16)(A)(i).

[100] *See McKinsey*, 986 F.2d at 404 (explaining that, if "personnel other than the plan administrator routinely assume responsibility for answering requests from plan participants and beneficiaries," their actions "may be imputed to the plan administrator); *see also Wilcott v. Matlack, Inc.*, 64 F.3d 1458, 1461 (10th Cir. 1995) ("Under appropriate circumstances, a § 1132(c) penalty may be based on information requests such as plaintiff's that were not directed to the plan administrator."); *Boone v. Leavenworth Anesthesia, Inc.*, 20 F.3d 1108, 1109 n.2 (10th Cir. 1994) (holding a letter sent to the plan administrator's counsel was a "sufficient written request" where counsel "handled the business of the plan").

[101] (Mot. 24, Doc. No. 68.)

[102] (*Id.* at 14–15.)

[103] (MetLife Opp'n 6–7, Doc. No. 71.)  MetLife also argues it should not be required to respond to this discovery request because the court dismissed Ms. Mayor's statutory damages claim it.  (*Id.* at 6.)  While this is true, Ms. Mayor's claim against the individual plan administrators remains and is premised on an alleged agency relationship between Union Pacific and MetLife.  MetLife may have responsive and discoverable documents.

The individual defendants also argue Union Pacific has no "record-keeping agreements" with MetLife.[104]  And, even if such agreements existed, MetLife did not compile them in the course of making its benefits decision—and they would "do nothing" to aid judicial review of that decision.[105]

The general prohibition against extra-record discovery in ERISA cases is specific to "a claimant's efforts to supplement the record with substantive evidence of [her] eligibility for benefits."[106]  The Tenth Circuit has "cautioned against too broad of a reading of [its] precedent regarding supplementation of an ERISA administrative record."[107]  Supplementation is warranted in a variety of situations.[108]  Courts have discretion to permit extra-record discovery if the proponent shows it is necessary to an ERISA claim (not concerning benefits eligibility), could not have been submitted to the administrator evaluating the claim, and would aid in "a fair and informed resolution of the claim."[109]

---

[104] (Union Pacific Opp'n 8, Doc. No. 73.)

[105] (*Id.* at 8–9.)

[106] *Murphy*, 619 F.3d at 1158.

[107] *Eugene S. v. Horizon Blue Cross Blue Shield of N.J.*, 663 F.3d 1124, 1129 (10th Cir. 2011); *see also Murphy*, 619 F.3d at 1159 ("Although we have frequently used broad language to describe our restriction on extra-record discovery and supplementation, the breadth of that language can be misleading, at least to some degree.").

[108] *See Hall*, 300 F.3d at 1203 (providing a non-exhaustive list of various circumstances in ERISA cases that "could warrant the admission of additional evidence").

[109] *H.R.*, 2022 U.S. Dist. LEXIS 184379, at *8 (quoting *Murphy*, 619 F.3d at 1163–64).

Ms. Mayor has met her burden with request 13.  To the extent there are agreements between Union Pacific and MetLife relating to MetLife's role in responding to information requests by plan participants or beneficiaries, they are necessary for Ms. Mayor's statutory damages claim.  That claim is premised on an agency relationship between Union Pacific and MetLife.  Any such agreements are relevant outside of MetLife's benefits evaluation.  And any agreements would aid a fair, informed, and efficient resolution of Ms. Mayor's statutory damages claim, allowing the parties to address it on the merits.  Accordingly, the motion is granted with respect to request 13 to the extent it seeks agreements between Union Pacific and MetLife relating to MetLife's role in responding to information requests by plan participants and beneficiaries.  MetLife and the individual defendants must produce all responsive agreements or must provide a verified statement to Ms. Mayor indicating all responsive agreements have already been produced.

## CONCLUSION

Ms. Mayor's motion for discovery[110] is granted in part and denied in part, and her objection to the administrative record[111] is sustained in part and overruled in part, in light of this ruling.  The motion is denied with respect to requests 4, 5, 7, and 14 through 17 because Ms. Mayor has not justified discovery of extra-record materials relating to MetLife's conflict of interest or failure to consider Utah law.

---

[110] (Doc. No. 68.)

[111] (Doc. No. 69.)

26

The motion is granted as to:

- requests 1 through 3 and 8 through 12, but only to the extent they seek plan-related documents MetLife compiled in the course of making its benefits decision;

- request 6, but only to the extent it seeks documents whereby Union Pacific granted MetLife discretion in handling accidental death benefits claims; and

- request 13, but only where it seeks agreements between Union Pacific and MetLife relating to MetLife's role in responding to information requests by plan participants and beneficiaries.

The defendants must supplement the administrative record with responsive documents—or provide Ms. Mayor with verification statements indicating all responsive documents have already been included in the record, in accordance with this order—by June 11, 2026, or a date mutually agreed to by the parties.

DATED this 14th day of May, 2026.

BY THE COURT:

Daphne A. Oberg
United States Magistrate Judge